UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ASHTON S. RHINE, SR., | ) | CIVIL ACTION NO. 4:19-CV-1781 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| ANDREW SAUL, | ) | |
| Defendant | ) | |

MEMORANDUM OPINION

I.   INTRODUCTION

Plaintiff Ashton S. Rhine, Sr., an adult individual who resides within the Middle District of Pennsylvania, seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits under Title II of the Social Security Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §405(g).

This matter is before me, upon consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. 13). After reviewing the parties' briefs, the Commissioner's final decision, and the relevant portions of the certified administrative transcript, I find the Commissioner's final decision is supported by substantial evidence. Accordingly, I recommend that the Commissioner's final decision be AFFIRMED.

II.     BACKGROUND & PROCEDURAL HISTORY

On May 10, 2018, Plaintiff protectively filed an application for disability insurance benefits under Title II of the Social Security Act. (Admin. Tr. 10; Doc. 8-2, p. 11).  In this application, Plaintiff alleged he became disabled as of March 23, 2013, when he was forty years old, due to the following conditions: MS, fatigue, balance issues, arthritis in knees and ankles, anxiety, PTSD, and seizures. (Admin. Tr. 210; Doc. 8-7, p. 23). Plaintiff alleges that the combination of these conditions affects his ability to lift, squat, bend, stand, walk, kneel, talk, climb stairs, remember/memorize, complete tasks, concentrate, understand, follow instructions, use his hands, and get along with others. (Admin. Tr. 226; Doc. 8-7, p. 39). Plaintiff has at least a high school education. (Admin. Tr. 20; Doc. 8-2, p. 21). Before the onset of his impairments, Plaintiff worked as an infantryman, garbage collector, trailer assembler, and corrections officer. *Id*.

On July 24, 2018, Plaintiff's application was denied at the initial level of administrative review. (Admin. Tr. 10; Doc. 8-2, p. 11). On September 14, 2018, Plaintiff requested an administrative hearing. *Id*.

On May 23, 2019, Plaintiff, assisted by his counsel, appeared and testified during a hearing before Administrative Law Judge Edward L. Brady (the "ALJ"). (Admin. Tr. 22; Doc. 8-2, p. 23). On June 18, 2019, the ALJ issued a decision denying Plaintiff's application for benefits. *Id.* On July 18, 2019, Plaintiff requested

review of the ALJ's decision by the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council"). (Admin. Tr. 163; Doc. 8-5, p. 26).

On August 29, 2019, the Appeals Council denied Plaintiff's request for review.  (Admin. Tr. 1; Doc. 8-2, p. 2).

On October 14, 2019, Plaintiff initiated this action by filing a Complaint. (Doc. 1). In the Complaint, Plaintiff alleges that the ALJ's decision denying the application is not supported by substantial evidence, and improperly applies the relevant law and regulations. *Id*. As relief, Plaintiff requests that the Court remand this case for a new administrative hearing. (Doc. 1, p. 5).

On April 21, 2020, the Commissioner filed an Answer. (Doc. 7). In the Answer, the Commissioner maintains that the decision holding that Plaintiff is not entitled to disability insurance benefits was made in accordance with the law and regulations and is supported by substantial evidence. (Doc. 7, ¶ 8). Along with his Answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 8).

Plaintiff's Brief (Doc. 14) and the Commissioner's Brief (Doc. 15) have been filed.  Plaintiff did not file a reply. This matter is now ripe for decision.

III.    STANDARDS OF REVIEW

   A.    SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

"In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before this Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

B.   STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also*

20 C.F.R. § 404.1505(a).[1] To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4).

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations

---

[1] Throughout this Report, I cite to the version of the administrative rulings and regulations that were in effect on the date the Commissioner's final decision was issued. In this case, the ALJ's decision, which serves as the final decision of the Commissioner, was issued on June 18, 2019.

caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a)(1). In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. § 404.1545(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512(a); *Mason*, 994 F.2d at 1064.  Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. § 404.1512(b)(3); *Mason*, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).  Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was

Page 7 of 43

accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Id.* at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir. 1999).

## IV.   DISCUSSION

Plaintiff raises the following errors in his brief:

(1)   Whether the decision of another government agency, namely the veteran administration, was disregarded in the decision making of this case.

(2)   Whether the diversity of the findings between two governmental agencies as to disability should be re-evaluated.

(Doc. 14, p. 3). Despite the above issues listed in Plaintiff's statement of errors, the brief appears to raise the following 3 issues:

(1)   Whether the Court should strike down 20 C.F.R. § 404.1504;

(2)   Whether the ALJ's Decision that Plaintiff Does Not Meet Listing 11.09 is Supported by Substantial Evidence; and

(3)   Whether the ALJ's Decision is Not Supported by Substantial Evidence Because There is an Unresolved Conflict Between the Vocational Expert Testimony and the Dictionary of Occupational Titles.

A.   THE ALJ'S DECISION DENYING PLAINTIFF'S APPLICATION

In his June 2019 decision, the ALJ found that Plaintiff met the insured status requirement of Title II of the Social Security Act through December 31, 2016.

(Admin. Tr. 12; Doc. 8-2, p. 13). Then, Plaintiff's application was evaluated at steps one through five of the sequential evaluation process.

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity at any point between March 23, 2013 (Plaintiff's alleged onset date) and December 31, 2016 (Plaintiff's date last insured) ("the relevant period"). (Admin. Tr. 12; Doc. 8-2, p. 13). At step two, the ALJ found that, during the relevant period, Plaintiff had the following medically determinable severe impairments: multiple sclerosis, obesity, anxiety, depression and post-traumatic stress disorder ("PTSD"). *Id*. The ALJ found that the following impairments were medically determinable but non-severe: hypertension, degenerative disc disease of the spine, and seizure disorder. *Id.* At step three, the ALJ found that, during the relevant period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Admin. Tr. 13; Doc. 8-2, p. 14).

Between steps three and four, the ALJ assessed Plaintiff's RFC. The ALJ found that, during the relevant period, Plaintiff retained the RFC to engage in sedentary work as defined in 20 C.F.R. § 404.1567(a) except:

> The claimant would require a cane for ambulation with occasional balancing and stooping. The claimant could not kneel, crouch, crawl or climb ladders, ropes or scaffolds. The claimant could not work around dangerous conditions or machinery. The claimant is limited to jobs involving only routine changes in workplace setting and routine.

(Admin. Tr. 15; Doc. 8-2, p. 16).

At step four, the ALJ found that, during the relevant period, Plaintiff could not engage in his past relevant work. (Admin. Tr. 20; Doc. 8-2, p. 21). At step five, the ALJ found that, considering Plaintiff's age, education and work experience, Plaintiff could engage in other work that existed in the national economy. *Id.* To support his conclusion, the ALJ relied on testimony given by a vocational expert during Plaintiff's administrative hearing and cited the following three (3) representative occupations: document preparer (DOT #249.587-018, assembler of small products (DOT #739.687-030), and charge account clerk (DOT #205.367-014). (Admin. Tr. 21; Doc. 8-2, p. 22).

B.   WHETHER 20 C.F.R. § 404.1504 SHOULD BE STRUCK DOWN

On March 27, 2017, 20 C.F.R. § 404.1504, addressing an ALJ's obligation to consider disability decision by other agencies and entities (like the Department of Veteran's Affairs) was amended. The new regulation states:

> Other governmental agencies and nongovernmental entities—such as the Department of Veterans Affairs, the Department of Defense, the Department of Labor, the Office of Personnel Management, State agencies, and private insurers—make disability, blindness, employability, Medicaid, workers' compensation, and other benefits decisions for their own programs using their own rules. Because a decision by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits is based on its rules, it is not binding on us and is not our decision about whether you are disabled or blind under our rules. Therefore, in claims filed (see § 404.614) on or after March 27, 2017,

we will not provide any analysis in our determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits. However, we will consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that we receive as evidence in your claim in accordance with § 404.1513(a)(1) through (4).

20 C.F.R. § 404.1504. The prior regulation on this subject stated that "a determination made by another agency that [a claimant] is disabled or blind is not binding on [the Social Security Administration]." 20 C.F.R. § 404.1504 (effective until March 26, 2017).

During notice and comment on the proposed revision to 20 C.F.R. § 404.1504 (and its Title XVI counterpart 20 C.F.R. 416.905), several comments were submitted about this change. I have reproduced the Administration's summary of the relevant comments and its response below:

Comment: While a few commenters agreed with our proposal not to provide analysis about decisions by other governmental agencies and nongovernmental entities in our decisions and determinations, other commenters disagreed that those decisions are inherently neither valuable nor persuasive. Some commenters stated these decisions are important evidence that we should always discuss because the rules or purposes of other disability programs are similar to our programs, while other commenters said we should discuss the decisions because they may be more or less probative to our decisionmaking due to the different standards used. Some commenters suggested we provide additional training to our adjudicators about the standards used by other governmental agencies and nongovernmental entities. Other commenters asserted that the Department of Veterans Affairs (VA) 100% disability ratings and Individual Unemployability (IU) ratings are highly probative to our decisionmaking by pointing to our own research

showing veterans are substantially more likely to be found disabled than the general population of applicants. A few commenters said we should adopt a VA 100% disability rating or have a rebuttable presumption that someone with a VA disability rating is entitled to disability under the Act.

Response: While we acknowledge the commenters' concerns, we are adopting our proposal in these final rules.

As we stated in the notice of proposed rulemaking (NPRM), there are four reasons why we are not requiring our adjudicators to explain their consideration of these decisions—(1) the Act's purpose and specific eligibility requirements for disability and blindness differ significantly from the purpose and eligibility requirements of other programs; (2) the other agency or entity's decision may not be in the record or may not include any explanation of how the decision was made, or what standards applied in making the decision; (3) our adjudicators generally do not have a detailed understanding of the rules other agencies or entities apply to make their decisions; and (4) over time Federal courts have interpreted and applied our rules and Social Security Ruling (SSR) 06-03p differently in different jurisdictions.[FN24]

Although we are not requiring adjudicators to provide written analysis about how they consider the decisions from other governmental agencies and nongovernmental entities, we do agree with the commenters that underlying evidence that other governmental agencies and nongovernmental entities use to support their decisions may be probative of whether an individual is disabled or blind under the Act. In sections 404.1504 and 416.904 of the proposed rules, we provided that we would consider in our determination or decision the relevant supporting evidence underlying the other governmental agency or nongovernmental entity's decision that we receive as evidence in a claim. We clarify in final 404.1504 and 416.904 that we will consider all of the supporting evidence underlying the decision from another government agency or nongovernmental entity decision that we receive as evidence in accordance with final 404.1513(a)(1)-(4) and 416.913(a)(1)-(4).

We are not adopting the suggestion that we should train our adjudicators on the various standards of other governmental agencies and nongovernmental entities that make disability or blindness decisions. Even with increased training, the actual decision reached under different standards is inherently neither valuable nor persuasive to determine whether an individual is disabled or blind under the requirements in the Act, for the reasons we discussed in the preamble to the NPRM.[FN25]

Furthermore, while we did not rely on the research cited in a few comments to propose these rules, upon review of that research,[FN26] we disagree with the commenters' summary of it. Specifically, our researchers studied the interaction of our rules and the VA's disability standards, focusing upon VA 100% disability ratings and IU ratings. They concluded VA and SSA disability programs serve different purposes for populations that overlap. While individuals with a VA rating of 100% or IU have a slightly higher allowance rate under our programs than members of the general population, nearly one-third are denied benefits based on our rules for evaluating medical (or medical-vocational) considerations. This data also supports our conclusion that these ratings alone are neither inherently valuable nor persuasive in our disability evaluation because they give us little substantive information to consider. Fortunately, the VA and the Department of Defense (DoD) share medical records electronically with us, and our adjudicators obtain the medical evidence documenting DoD and VA treatment and evaluations to evaluate these claims.

Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 F.R. 5844-01, 5848-49 (Jan. 18, 2017).

The March 18, 2010 Department of Veterans Affairs decision is a part of the administrative record in this case. (Admin. Tr. 264-270; Doc. 8-7, pp. 77-83). In that decision, the Department of Veterans Affairs found that Plaintiff met "schedular requirements for a grant of individual unemployability." (Admin. Tr. 269; Doc. 8-7,

p. 82). This conclusion was based on the following disability ratings for service-connected impairments: disability rating of 40% impairment for weakness of the lower left extremity associated with multiple sclerosis; disability rating of 30% for weakness of the upper left extremity associated with multiple sclerosis; disability rating of 30% for difficulty swallowing associated with multiple sclerosis; disability rating of 10% for facial palsy associated with multiple sclerosis; disability rating of 10% for parathesias of the lower right extremity associated with multiple sclerosis; disability rating of 10% for right ankle sprain; and disability rating of 10% for lumbar sprain with minimal degenerative changes. (Admin. Tr. 264-270; Doc. 8-7, pp. 77-83).

In his decision, the ALJ wrote:

Decisions made by other agencies and entities are not binding on us because those decisions are made applying different criteria than the Social Security Act and our regulations (20 C.F.R. § 404.1504 and § 416.904). These other governmental agencies and nongovernmental entities use their own rules for their own programs. The most common example is the disability rating from the Department of Veterans Affairs. Here, the claimant was assigned a disability rating of 100 percent service connected disability (Exhibit 13E). As noted we do not consider this finding in determining disability. Underlying this decision is no function by function evaluation of the claimant, but simply a percentage of disability which is not consistent with the evaluation dictated under the Social Security Act.

(Admin. Tr. 19; Doc. 8-2, p. 20).

Plaintiff's application in this case was filed on May 10, 2018. The new version of 20 C.F.R. § 404.1504 applies. Plaintiff argues that this regulation, and its Title XVI counterpart, should be struck down. Specifically, he contends:

6.     The Notice of Decision – Unfavorable in this case sighted [sic] Social Security Regulations 20 C.F.R.  404.1504 and 416.904.

7.     These sections both provide that "therefore, in claims filed (see Section 404.614) on or after March 27, 2017, we will not provide any analysis in our determination or decision about a decision made by any other governmental agency or a non-governmental agency about whether you are disabled, blind, employable, or entitled to any benefits. However, we will consider all the supporting evidence underlying the other governmental agency or non-governmental entities [sic] decision that we receive as evidence in your claim in accordance with Section 404, 1513(a)(1) through (4):.

8.     The issues raised by these regulations are twofold. First, although I would acknowledge that the Social Security Administration has the right to say the decisions by other governmental agencies are not binding on them in their decision making process, to totally disregard the decision constitutes an error of law or abuse of discretion on the part of the Social Security Administration. It is understood that different regulations may result in different decisions regarding the disability of a Claimant by various governmental agencies, but the action of totally disregarding a decision of another governmental agency requires a duplication of effort on the part of each agency and further does not offer each agency the opportunity to consider the reasoning employed by its sister agency.

9.     The two rules in question allow the Administrative Law Judge to ignore the decision, in this case the Veterans Administration, when, in fact, they should be required to consider the decision of the Veterans Administration and offer reasoning and justification of why they did not accept such a decision in cases like this.

(Doc. 14, pp. 4-5).

In response, the Commissioner argues:

Plaintiff's primary argument revolves around the fact that he received a disability rating from the Veterans' Administration, which he believes should translate into a finding of disability from the SSA. This claim is wholly without merit.

Because Plaintiff applied for benefits on or after March 27, 2017, the ALJ applied a new regulatory framework that differs substantially from prior regulations. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors correction by 82 Fed. Reg. 15,132 (Mar. 27, 2017)). Relevant here, the new regulations revised the agency's policy regarding consideration of disability decisions by other governmental agencies and nongovernmental entities.

The new regulations instruct that such a disability decision "is inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled." 20 C.F.R. § 404.1520b(c)(1) (2017); 82 FR 5844, 5848-49. The regulations thus do not require an ALJ to provide "any analysis about how [he or she] considered such evidence in [his or her] determination or decision." 20 C.F.R. § 404.1520b(c). The agency explained that this rule was adopted because, among other reasons, there are important differences between the Social Security disability program and other disability programs and the fact that adjudicators generally do not have a detailed understanding of the rules governing other agencies or entities. 82 FR 5844, 5848-49.

This regulation is valid and binding. Congress granted the Commissioner exceptionally broad rulemaking authority under the Act to promulgate rules and regulations "necessary or appropriate to carry out" the relevant statutory provisions and to "regulate and provide for the nature and extent of the proofs and evidence." 42 U.S.C. § 405(a); *see also* 42 U.S.C. § 1383(d)(1) (making provisions of 42 U.S.C. § 405(a) applicable to Title XVI); *Barnhart v. Waltron*, 535 U.S. 212, 217-25 (2002) (deferring to the Commissioner's "considerable authority" to interpret the Act); *Heckler v. Campbell*, 461 U.S. 458, 466 (1983). When a statute grants an agency such broad authority, its initial

policies and rules are not "carved in stone." *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 863 64 (1984). The agency has broad latitude, therefore, to change its policy concerning evaluation of evidence—even if the new regulations conflict with prior judicial precedent. *See Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982-83 (2005) (citation omitted). A court's "prior construction of a statute trumps an agency construction otherwise entitled to Chevron deference only if the prior court's decision holds that its construction follows from the unambiguous terms of the statute and this leaves no room for agency discretion." *Brand X*, 545 U.S. at 982.

There is no statutory mandate requiring the Commissioner to give particular consideration to a decision from another governmental agency apply a different disability program. Accordingly, the exceptionally broad rulemaking authority conferred by Congress leaves ample room for the Commissioner to decide that such decisions are inherently neither valuable nor persuasive, and to not require analysis of such decisions. Where, as here, the statute "is silent or ambiguous with respect to the specific issue," a reviewing court must sustain the agency's interpretation if it is " based on a permissible construction" of the Act. *Walton*, 535 U.S. at 218 (quoting *Chevron*, 467 U.S. at 843).

Plaintiff argues that the Commissioner should have adopted a different rule, suggesting that "the action of totally disregarding a decision of another governmental agency requires a duplication of effort on the part of each agency and further does not offer each agency the opportunity to consider the reasoning employed by its sister agency," (Pl.'s Br. at 5). But this does not make the regulation invalid. Any policy can be critiqued, but Plaintiff must do more than argue that the agency's judgment was misguided; he must show that the agency's action "exceeds the bounds of the permissible." *See Walton*, 535 U.S. at 218. Plaintiff does not come close to making such a showing here.

Ultimately, the Court should affirm the ALJ's decision here because the ALJ followed the new governing regulations, and substantial evidence—a bar that is "not high" and requires only such relevant evidence that a reasonable mind might accept as adequate, *Biestek*, 139 S. Ct. 1148, 1154—supports the ALJ's fact-finding. The record

provides more than a "mere scintilla" of support of the ALJ's finding that Plaintiff could perform sedentary work which: allows the use of a cane for ambulation; requires only occasional balancing and stooping; does not require any kneeling, crouching, crawling, or climbing ladders/ropes/scaffolds; and only involves routine changes in the workplace and workplace routine (Tr. 15, 109-10).

(Doc. 15, pp. 10-13).

Plaintiff asserts a vague argument that 20 C.F.R. § 404.1504 and 20 C.F.R. § 416.904 should be invalidated. The gravamen of Plaintiff's argument that this regulation should be struck down is only one sentence long. Plaintiff states "to totally disregard the decision constitutes an error of law or abuse of discretion on the part of the Social Security Administration." (Doc. 14, p. 5). Plaintiff does not identify the statute that authorizes the Commissioner to make regulations about the nature and extent of evidence required to evaluate applications for disability benefits under the Social Security Act, does not cite to the standard of deference such regulations are entitled to, does not identify the scope of this Court's ability to review this challenge, and does not cite to any rationale to support his contention that these regulations should be struck down under the appropriate standard of deference. In fact, Plaintiff cites to no facts or legal authority to support his assertion that these regulations should be struck down. *See* Local Rule 83.40.4(c) (explaining that "[e]ach contention [in a plaintiff's brief] must be supported by specific reference to the portion of the record relied upon and by citations to statutes, regulations and cases

supporting plaintiff's position."). The Commissioner's response, which cites to legal authority in response to Plaintiff's argument does not cure this defect. Absent any legal authority cited by Plaintiff to support his position that 20 C.F.R. § 404.1504 and 20 C.F.R. § 416.904 should be struck down, this challenge is denied because it is not sufficiently developed by Plaintiff to permit judicial review. Having concluded that Plaintiff's challenge to these regulations is denied, I now turn my attention to the issue of whether the regulations were properly applied in this case.

Plaintiff's application was filed after the date when the new regulation became effective. The record in this case includes the decision of the Bureau of Veterans' Affairs. In that decision, the following items are listed under the heading "evidence":

- VA Form 21-4138, Statement in Support of Claim, received January 21, 2010

- Duty to Assist letter, dated January 25, 2010

- Private Medical evidence from Geisinger Health System, received with claim, and also on February 18, 2010

- Outpatient treatment records, Altoona VAMC, dated September 23, 2009 to March 2, 2010

- Outpatient treatment records, Pittsburgh VAMC, dated July 16, 2009 to November 24, 2009

(Admin. Tr. 265; Doc. 8-8, p. 78). None of these documents were presented to the ALJ in connection with this case. Furthermore, as noted above, the relevant inquiry before the ALJ in this case is whether Plaintiff became disabled between March 23,

2013 and December 31, 2016.[2] Because this evidence was not submitted in connection with this application for benefits, and pre-dates the relevant period in this case by three years, I find that the ALJ's analysis in this case complies with 20 C.F.R. § 404.1504 even though he did not consider any of the supporting medical evidence from the 2010 Bureau of Veteran's Affairs decision.

I note that the record in this case *does* include medical evidence from the Bureau of Veterans Affairs for the time period of January 1, 2016 through May 17, 2019, which was considered.

C. WHETHER THE ALJ'S DECISION THAT PLAINTIFF DOES NOT MEET LISTING 11.09 IS SUPPORTED BY SUBSTANTIAL EVIDENCE

Appendix 1 of 20 C.F.R. Part 404, Subpart P ("listing of impairments"), describes, for each major body system, the severity of impairment that is severe enough to prevent a claimant from doing any gainful activity regardless of the claimant's age, education or work experience. 20 C.F.R. § 404.1525(a). At step three of the sequential evaluation process, the ALJ considers whether the combination of

---

[2] This case involves the evaluation of Plaintiff's second application for benefits. In his first application, filed in November 4, 2011, a different ALJ considered whether Plaintiff was disabled between September 6, 2011 and March 22, 2013. (Admin. Tr. 117-126; Doc. 8-4, pp. 5-14). Although the Bureau of Veterans' Affairs decision was issued more than one year before Plaintiff filed his November 2011 application social security benefits, it does not appear that the VA decision was made a part of the record in that case. (Admin. Tr. 127-129; Doc. 8-4, pp. 15-17). The ALJ's 2013 decision was not appealed to the Appeals Council or this Court. (Admin. Tr. 217; Doc. 8-7, p. 30).

the claimant's medically determinable impairments meets the severity of one of the impairments in the listing of impairments. 20 C.F.R. § 404.1520(a)(4)(iii). If a claimant has an impairment that meets the twelve-month duration requirement and meets or equals all the criteria of an impairment in the listing of impairments, the claimant is found disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

However, to qualify for benefits by showing that an impairment, or combination of impairments, is equivalent to a listed impairment, the claimant bears the burden of presenting "medical findings equivalent in severity to all the criteria for the one most similar impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990). An impairment, no matter how severe, that meets or equals only some of the criteria for a listed impairment is not enough.  *Id.*

Plaintiff has a medically determinable severe impairment due to multiple sclerosis. The Commissioner's regulations describe multiple sclerosis as:

> a chronic, inflammatory, degenerative disorder that damages the myelin sheath surrounding the nerve fibers in the brain and spinal cord. The damage disrupts the normal transmission of nerve impulses within the brain and between the brain and other parts of the body, causing impairment in muscle coordination, strength, balance, sensation, and vision. There are several forms of MS, ranging from mildly to highly aggressive. Milder forms generally involve acute attacks (exacerbations) with partial or complete recovery from signs and symptoms (remissions). Aggressive forms generally exhibit a steady progression of signs and symptoms with few or no remissions. The effects of all forms vary from person to person.

20 C.F.R. Part 404, Subpart P, Appendix 1 § 11.00(N)(1). The same regulation also

provides the following guidance for evaluating multiple sclerosis under Listing

11.09:

> We evaluate your signs and symptoms, such as flaccidity, spasticity, spasms, incoordination, imbalance, tremor, physical fatigue, muscle weakness, dizziness, tingling, and numbness when we determine your ability to stand up, balance, walk, or perform fine and gross motor movements. When determining whether you have limitations of physical and mental functioning, we will consider your other impairments or signs and symptoms that develop secondary to the disorder, such as fatigue; visual loss; trouble sleeping; impaired attention, concentration, memory, or judgment; mood swings; and depression. If you have a vision impairment resulting from your MS, we may evaluate that impairment under the special senses body system, 2.00.

20 C.F.R. Part 404, Subpart P, Appendix 1 § 11.00(N)(2).

To meet Listing 11.09, a claimant must prove that he meets either the A or B

criteria of the listing set forth below:

> A.   Disorganization of motor function in two extremities (see 11.00D1), resulting in an extreme limitation (see 11.00D2) in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities; or
>
> B.   Marked limitation (see 11.00G2) in physical functioning (see 11.00G3a), and in one of the following:
>
>> 1.   Understanding, remembering, or applying information (see 11.00G3b(i)); or
>>
>> 2.   Interacting with others (see 11.00G3b(ii)); or

3.    Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or

4.    Adapting or managing oneself (see 11.00G3b(iv)).

20 C.F.R. Part 404, Subpart P, Appendix 1 § 11.09.

In his decision, the ALJ addressed Listing 11.09 as follows:

With regard to the claimant's multiple sclerosis, Listing 11.09 requires disorganization of motor function in two extremities resulting in an extreme limitation in the ability to stand up from a seated position, balance while standing or walking or in using the upper extremities or a marked limitation in one of the following: 1. Understand, remember, or apply information, 2. Interact with others, 3. Concentrate, persist or maintain pace and 4. Adapt or manage oneself. In this matter, the record clearly does not establish these criteria. The record shows that on neurological examination, despite some decreased sensation on the left dorsal foot and bilateral soles of the feet, the claimant had a normal casual gait with no use of an assistive device that would affect both upper extremities. The claimant was also found to have full motor strength in the upper and lower extremities and intact finger-to-nose dexterity (Exhibit B7F). Additional records within the relevant period show physical examination findings that only note general achiness, but no other specific abnormality to gait, muscle strength, sensation or reflexes (Exhibit B8F). Further, the clinical findings have noted the claimant's language was intact along with his memory, attention and concentration, and he was able to follow complex commands (Exhibit B7F). Lastly, the level of treatment and activities of the claimant would not support a marked limitation, as discussed in detail below.

(Admin. Tr. 13; Doc. 8-2, p. 14).

Plaintiff argues:

10.    The Veterans Administration findings which are part of Exhibit B. 11. F specifically found that the Plaintiff had a 40% disability based on left lower extremity weakness due to multiple sclerosis, and a 30% disability due to left upper extremity weakness due to

multiple sclerosis. The Plaintiff also had a right lower extremity paresthesia due to multiple sclerosis causing a 10% disability.

11.   These results would lead one to believe that a substantial whole body disability on the left side of 30% of the left upper extremity and a 40% left lower extremity disability would constitute at least marked, if not extreme disability and qualify the Plaintiff for benefits under Listing of Impairments 11.09(a) or (b).

12.   This acknowledgement of the B requirement requires a marked limitation in one of the following: (1) understanding, remembering or applying information; (2) interacting with others; (3) concentrating, persisting or maintaining pace; and (4) adapting and managing oneself.

(Doc. 14, p. 6).

In response, the Commissioner argues:

Plaintiff next superficially argues that his diagnosed multiple sclerosis met the requirements of Listing 11.09 (at step three of the sequential evaluation process) on or before December 31, 2016, when his insured status expired (Pl.'s Br. at 6). Again, Plaintiff makes no reference to anything in the record to support his argument.

To be clear, it is Plaintiff's burden to prove disability at step three. *See* 20 C.F.R. 404.1512(a) (stating that a claimant bears the burden of providing sufficient evidence to establish entitlement to disability); *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987) (stating that it is the claimant's burden to present medical findings that show that his impairment matches the severity of a listed impairment). In order to meet a listing, a claimant must show that all of the criteria of that listing are met. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990), Meeting only some criteria of a listing "no matter how severely does not qualify." *Id.*

Here, as previously discussed, Plaintiff's treatment for his complaints has been conservative and routine in nature. And the record shows that the ALJ considered whether Plaintiff's impairment(s) met or equaled the severity of a listed impairment, including Plaintiff's multiple sclerosis at Listing 11.09 (Tr. 13). In addition, the ALJ's fact-finding is

further supported by the prior administrative medical findings from the state agency physician, who is highly qualified and an expert in Social Security disability evaluation. 20 C.F.R. § 404.1513a(b)(1). Specifically, the state agency physician reviewing Plaintiff's claim for benefits in July 2018 (including the category of neurological disorders at § 11.00), concluded that Plaintiff did not have an impairment or combination of impairments that met a listing on or before December 31, 2016, when his insured status expired (Tr. 133-38). Thus, this argument is likewise without merit.

(Doc. 15, pp. 14-15).

Although Plaintiff argues that he meets both sections (a) and (b) of Listing 11.09, Plaintiff only develops his argument as to section (a). Therefore, to the extent Plaintiff alleges that he also meets section (b) of this listing by demonstrating a "marked" limitation in one of the four enumerated areas I am not persuaded.

Turning to section (a) of Listing 11.09, this section requires a claimant to prove that he suffers from "[d]isorganization of motor function in two extremities (see 11.00D1), resulting in an extreme limitation (see 11.00D2) in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities." 20 C.F.R. Part 404, Subpart P, Appendix 1. The Commissioner's regulations define "disorganization of motor function" as:

interference, due to your neurological disorder, with movement of two extremities; i.e., the lower extremities, or upper extremities (including fingers, wrists, hands, arms, and shoulders). By two extremities we mean both lower extremities, or both upper extremities, or one upper extremity and one lower extremity.

Page 25 of 43

20 C.F.R. Part 404, Subpart P, Appendix 1 § 1.00(D)(1). An "extreme" limitation is

defined as "the inability to stand up from a seated position, maintain balance in a

standing position and while walking, or use your upper extremities to independently

initiate, sustain, and complete work-related activities." 20 C.F.R. Part 404, Subpart

P, Appendix 1 § 1.00(D)(2). The Commissioner's regulations provide the following

definitions for "inability to stand up from a seated position," "inability to maintain

balance in a seated position," and "inability to use your upper extremities":

a.      Inability to stand up from a seated position means that once
        seated you are unable to stand and maintain an upright position
        without the assistance of another person or the use of an assistive
        device, such as a walker, two crutches, or two canes.

b.      Inability to maintain balance in a standing position means that
        you are unable to maintain an upright position while standing or
        walking without the assistance of another person or an assistive
        device, such as a walker, two crutches, or two canes.

c.      Inability to use your upper extremities means that you have a loss
        of function of both upper extremities (including fingers, wrists,
        hands, arms, and shoulders) that very seriously limits your ability
        to independently initiate, sustain, and complete work-related
        activities involving fine and gross motor movements. Inability to
        perform fine and gross motor movements could include not being
        able to pinch, manipulate, and use your fingers; or not being able
        to use your hands, arms, and shoulders to perform gross motor
        movements, such as handling, gripping, grasping, holding,
        turning, and reaching; or not being able to engage in exertional
        movements such a lifting, carrying, pushing, and pulling.

20 C.F.R. Part 404, Subpart P, Appendix 1 § 1.00(D)(2)(a)-(c).

Plaintiff does not clearly identify which two extremities exhibit disorganization of motor function, or explain what "extreme limitation" the disorganization of limitation results in. In support of this argument, Plaintiff references the Bureau of Veterans' Affairs decision discussing Plaintiff's lower left, upper left, and lower right extremities. As discussed above, the ALJ was not required to consider the administrative findings made in that decision, and the medical evidence that supports the Bureau of Veterans' Affairs decision (1) was not submitted to the ALJ in connection with Plaintiff's May 2018 application for benefits, and (2) appear to pre-date the period of time relevant to Plaintiff's May 2018 decision by three years. Accordingly, I am not persuaded that remand is required for further consideration of whether the ALJ erred at step three by failing to consider this evidence.

      D.    WHETHER THE ALJ'S DECISION IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE BECAUSE THERE IS AN UNRESOLVED CONFLICT BETWEEN THE VOCATIONAL EXPERT TESTIMONY AND THE DICTIONARY OF OCCUPATIONAL TITLES

Step five of the sequential evaluation process is unique, as it is the only step where the government bears the burden of proof. *See* 20 C.F.R. § 404.1512(b)(3) ("In order to determine under § 404.1520(g) that you are able to adjust to other work, we must provide evidence about the existence of work in the national economy that you can do . . ., given your residual functional capacity . . . age, education, and work

experience."). In most cases, this burden is met by relying on evidence from the two publications by the United States Department of Labor (The Dictionary of Occupational Titles; and, Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles). These publications are often supplemented by testimony from a vocational expert.

Where there is an apparent, unresolved conflict about every occupation identified by a vocational expert, the ALJ's conclusion at step five is not supported by substantial evidence. *Boone v. Barnhart*, 353 F.3d 203, 208 (3d Cir. 2003) (concluding that the VE's testimony did not constitute substantial evidence that the claimant could perform a significant number of jobs because "according to the DOT, [claimant could not] perform any of the occupations identified by the VE."); *cf. Rutherford v. Barnhart*, 399 F.3d 546, 557 (3d Cir. 2005) (concluding that an ALJ's decision was supported by substantial evidence where "inconsistencies [were] not present as to each of the jobs that the expert did list.").

Plaintiff's challenge to the adequacy of the VE testimony is three-fold. First, he argues that the ALJ did not explain why he chose to rely on the testimony of the VE when it conflicted with the information contained in the DOT. Second, Plaintiff argues that Plaintiff could not do any of the occupations because he cannot be expected to frequently use his upper extremities (a limitation that is not included in the RFC assessment). Third, Plaintiff argues that the ALJ's decision is not supported

Page 28 of 43

by substantial evidence because he did not identity three representative occupations that Plaintiff could do. I will address each argument below.

> 1. Whether the ALJ Failed to Adequately Explain Why He Relied on VE Testimony that Conflicts with the DOT

In 2000, the Social Security Administration published a policy ruling to clarify its standards for the use of vocational experts who provide evidence at ALJ hearings. SSR 00-4p, 2000 WL 1898704. This Ruling explains that:

> Occupational evidence provided by a [Vocational Expert] generally should be consistent with the occupational information supplied by the [Dictionary of Occupational Titles]. When there is an apparent unresolved conflict between [Vocational Expert] evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the [Vocational Expert] evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

> Neither the [Dictionary of Occupational Titles] nor the [Vocational Expert] evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the [Vocational Expert] is reasonable and provides a basis for relying on the [Vocational Expert] testimony rather than on the [Dictionary of Occupational Titles] information.

SSR 00-4p, 2000 WL 1898704 at *2-3.

During the administrative hearing, the VE testified as follows:

> Q   Thank you. With that in mind, let's presume the following hypothetical scenario. Let's assume we have a hypothetical individual the same age, education and same experience, as the claimant that is before us. Let's further presume this individual

maintains the ability to do what I describe as a limited range of sedentary work. In addition to being limited to sedentary duty work, this individual would require a cane for ambulation, with occasional balancing and stooping, no kneeling, crouching or crawling, and no climbing of ladders, ropes or scaffolds. This individual should also avoid jobs requiring him to work around dangerous conditions or machinery. Based on those limitations, could this hypothetical person perform any of the past work of the claimant, that is before us?

A       No sir, the past work would be out.

Q       Are there other jobs such a person could perform?

A       I would indicate the following representative positions. This would be in the national economy for all three. First, document preparer or preparation. Sedentary, unskilled SVP of 2. DOT code 249.587-018. That is going to be 20 to 21,000 nationally. I am going to indicate an assembler of small products, at the sedentary, unskilled level, SVP of 2. That DOT code is 739.687-030. That is going to be 45,000 nationally, and I would allow for a caveat to that particular position after my testimony or before when ready. I would also indicate charge account clerk, sedentary, unskilled, SVP of 2. DOT code 205.367-014, 20,000 nationally.

Q       If indicated, in addition to the limitations that I just provided, that this individual would be limited to jobs involving only routine changes in workplace setting, and workplace routine, would these jobs remain?

A       Yes, sir.

. . . .

Q       Your testimony today, is it consistent with the *Dictionary of Occupational Titles*?

A       For the most part, it is. I have two caveats. For the first, I will address is the assembler of small products, that I offered at the

sedentary level. Assembly is performed at every exertional level, per the Department of Labor and Industry. In the DOT, the code that I used listed as light. There's two definitions or two codes in the DOT that address small parts assembly. A very good descriptors of how it is—the standardization of how it's performed, general bench type work, and it gives a snapshot of industries, tools and equipment that are relied on, and also the products themselves. But it is not nearly and exhaustive list. Seeing these jobs, how they are and can be performed in the economy, and also researching how these jobs are structured. Basically that's the manner in which I testified to those particular jobs. I would also indicate that the DOT does not recognize two straight forward job titles, at the sedentary level, and that's certainly incorporated into how I view assembly positions, that are bench work, but normally that's the code that I'm relying when I address it. . . .

(Admin. Tr. 109-111; Doc. 8-3, pp. 33-35).

In his decision, the ALJ addressed the conflict about the assembler of small

parts position as follows:

Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles with the exception of the exertional classification of the assembler position. The vocational expert explained that while the assembler position is listed in the Dictionary of Occupational Titles as a light exertional job, it exists at the sedentary exertional level of work in a bench work setting based on his training and experience.

(Admin. Tr. 21; Doc. 8-2, p. 22).

Plaintiff argues:

13.     In addition to the above grounds, the undersigned would also note that the vocational testimony in this case is in error in that the assembler of small products job, DOT No. 739-687-030 is

> clearly under the Dictionary of Occupational Titles a light job
> which would not be consistent with the Administrative Law
> Judge's findings that the Plaintiff in this case was limited to
> sedentary work.

(Doc. 14, p. 6).

In response, the Commissioner argues:

> In addition, Plaintiff's next argument, that Plaintiff cannot perform the
> occupation of small products assembler because it is described in the
> DOT as light work, requires little discussion (Pl.'s Br. at 6). Plaintiff
> ignores the fact that, at the administrative hearing, the vocational expert
> specifically testified that, while the occupation of small products
> assembler is identified in the DOT as light, the vocational expert
> specifically explained that the occupation can be performed at the
> sedentary level of exertion (Tr. 111). Thus, the vocational expert
> appropriately explained any apparent conflict between his testimony
> and the jobs as they are defined in the DOT, pursuant to SSR 00-4p.

(Doc. 15, pp. 16-17) (internal footnotes omitted).

I agree with Plaintiff that the ALJ's decision to rely on VE testimony instead

of the DOT is inconsistent with SSR 00-4p. SSR 00-4p states:

> When vocational evidence provided by a VE or VS is not consistent
> with information in the DOT, the adjudicator must resolve this conflict
> before relying on the VE or VS evidence to support a determination or
> decision that the individual is not disabled. The adjudicator will explain
> in the determination how he or she resolved the conflict.

2000 WL 1898704 at *4. Although the ALJ in this case summarized the VE's

testimony about the exertional level conflict, he did not explain how he resolved that

conflict (i.e., why he chose to rely on the VE's testimony instead of the DOT).

However, I also find that this error is harmless because it does not impact the

Page 32 of 43

outcome of this case. *See Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result."). As explained in Sections IV. (D)(2) and (3) of this opinion, the other two occupations identified account for Plaintiff's credibly established limitations, the information provided by the VE about the other two occupations does not conflict with the DOT, and the other two occupations offer the requisite proof to support the ALJ's assessment that a significant number of jobs exist in the national economy that Plaintiff can perform. Accordingly, I am not persuaded that remand is required.

<blockquote>

2.      Whether the RFC and Hypothetical Question Posed to the VE Incorrectly Omit a Limitation to Less than Frequent Use of Both Upper Extremities

</blockquote>

One oft-contested issue in this setting relates to the claimant's residual capacity for work in the national economy. As discussed above, a claimant's RFC is defined as "the most [a claimant' can still do despite [his or her] limitations," taking into account all of a claimant's medically determinable impairments. 20 C.F.R. § 404.1545. In making this assessment, the ALJ is required to consider the combined effect of all medically determinable impairments, both severe and non-severe. *Id.* Although such challenges most often arise in the context of challenges to the sufficiency of vocational expert testimony, the law is clear that an RFC assessment

that fails to take all of a claimant's credibly established limitations into account is defective. *See Rutherford v. Barnhart*, 399 F.3d 546, 554 n. 8 (3d Cir. 2005) (noting that an argument that VE testimony cannot be relied upon where an ALJ failed to recognize credibly established limitations during an RFC assessment is best understood as a challenge to the RFC assessment itself); *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 147 (3d Cir. 2007) (noting that an ALJ must include in the RFC those limitations which he finds to be credible).

Moreover, because an ALJ's RFC assessment is an integral component of his or her findings at steps four and five of the sequential evaluation process, an erroneous or unsupported RFC assessment undermines the ALJ's conclusions at those steps and is generally a basis for remand.

During the administrative hearing, the VE testified:

EXAMINATION OF VOCATIONAL EXPERT BY ATTORNEY:

Q    Mr. Keating, what degree of use of the hands is associated with the jobs that you've suggested? The document preparer, the small parts assembler and the charge account clerk?

A    We'll begin with the charge account clerk. Frequent handling and occasional fingering. With regard to assembler, that's going to be constant across the board. Document preparation is frequent reaching, handling and fingering.

Q    So, if the Judge found the testimony of the claimant credible, to the extent that he would be limited to occasional or less use of his upper extremities, would he be able to perform any of the jobs you suggested today?

A       No.

(Admin. Tr. 112; Doc. 8-3, p. 36).

In his RFC assessment, the ALJ did not restrict Plaintiff to "occasional or less" use of his upper extremities. The ALJ summarized the medical evidence associated with Plaintiff's severe physical impairments (multiple sclerosis and obesity) as follows:

> The record established the existence of multiple sclerosis by diagnostic testing, including an MRI of the brain (Exhibit B7F, Pgs. 108-110). However, the record does not contain treatment records until January 22, 2014 with the claimant reporting having a headache once a week, but no flares or deterioration since the prior visit six months earlier. Treatment records from April 10, 2014 show the claimant was treating with medication and his physical examination findings at that time indicated intact speech, intact extraocular eye muscles, normal gait, normal coordination of the arms and full (5 out of 5) muscle strength in all major muscle groups of the arms and legs bilaterally. Treatment records from July 2, 2014 note the claimant was doing very well on medication with no flare-ups or exacerbations. Further, records from December 2014 note the claimant reported his symptoms were stable and he denied flares. However, he did report dizziness/vertigo and disequilibrium of gait (Exhibits B1F, Pgs. 22 and 26, B2F, B7F, Pgs. 90 and 96-97 and B8F).

> The record shows the claimant had a neurological examination by a neurologist in Pittsburgh on June 12, 2015. These records note the claimant was returning after 6 years to re-establish treatment for multiple sclerosis. These records note that since 6 years prior, the claimant only had 1 major exacerbation requiring treatment with steroids and that was in 2010. On examination, the claimant was noted to have a stutter, but his language was intact along with his memory, attention and concentration, and he was able to follow complex commands. The claimant had full motor strength in the upper and lower extremities. The claimant had decreased sensation in the left hand, left

Page 35 of 43

dorsal foot and bilateral soles of the feet, but reflexes were within normal limits. The claimant was found to have intact finger-to-nose dexterity and normal rapid alternating movements. The claimant was noted to have a normal casual gait, but was unsteady on toe/heal walking and unable to perform tandem walking. The neurologist indicate [sic] the claimant's condition was stable with medication and he should continue with his current dose (Exhibit B7F, Pgs. 100-102).

Treatment records from February 5, 2016 note the claimant did not go to the follow-up with his neurologist due to a mix up and was rescheduling the appointment (Exhibit B8F, Pgs. 47-49). The records after this note show no significant treatment related to multiple sclerosis aside from routine medication until a note on March 2, 2017 indicating he had not gone back to the neurologist in Pittsburgh due to not wanting to take a shuttle bus. The physical examination findings only note general achiness but no other specific abnormality to gait, muscle strength, sensation or reflexes. These records indicate the claimant stated he would be going back to the neurologist (Exhibit B8F, Pgs. 32-34). Treatment records from October 2017 note the claimant was continued on his current medication and would hopefully follow with his neurologist (Exhibit 8F, Pg. 29). Treatment records from February 15, 2018 and October 29, 2018 note the claimant reported he was doing well with records from October indicating no recent flares (Exhibit 8F, Pgs. 20 and 24). In addition, treatment records from February 15, 2018 note the claimant reported knee pain, but had no interest in treatment at that time (Exhibit 8F, Pg. 24). Treatment records from October 29, 2018 note the claimant reported he was doing well in terms of his multiple sclerosis and was walking more due to not having a license at that time (Exhibit B5F, Pgs. 20-21). Lastly, treatment records show no significant exacerbation of symptoms and no significant additional treatment (Exhibits B5F and B11F).

In terms of the claimant's obesity, at application, the claimant reported to stand 5 feet 11 inches tall and weigh 330 pounds (Exhibit B3E). Further, this condition is noted throughout the treatment records (Exhibit B8F). However, the record does not establish specific limitations directly related to the claimant's obesity. Nevertheless, the undersigned has considered some level of limitation to the exertional ability, postural activities, range of motion and environmental

conditions due to obesity. In addition, as indicated above, the undersigned has taken into account the cumulative effects of the claimant's obesity on the claimant's co-existing impairments. In this regard, the claimant's ability to ambulate would be directly impacted by his weight. In sum, it is emphasized that the undersigned considered the cumulative effects of the claimant's obesity when forming the residual functional capacity as set forth above.

(Admin. Tr. 16-18; Doc. 8-2, pp. 17-19)

Plaintiff argues:

14.    . . . The other two jobs would require frequent to continuous use of the Plaintiff's upper extremities and it should be remembered that the Veterans Administration found the Plaintiff had a whole body disability of 30% due to weakness of his upper extremity associated with multiple sclerosis.

(Doc. 14, p. 7).

In response, the Commissioner argues:

Finally, Plaintiff appears to argue (again with no citation to the transcript or any binding authority) that the occupations named by the vocational expert are in conflict with the ALJ's residual functional capacity assessment (Pl.'s Br. at 6-7). This argument is simply without basis.

Here, in response to the ALJ's hypothetical questioning, the vocational expert named the representative sedentary occupations of document preparer, small products assembler, and charge account clerk (Tr. 110). Plaintiff alleges that Plaintiff cannot perform the occupations of document preparer or charge account clerk because, he claims, according to the DOT, both occupations require use of the upper extremities (Pl.'s Br. at 7). However, Plaintiff offers no relevant evidence to support his assertion that he needed to be further limited than the ALJ found in the residual functional capacity assessment. Most significantly, there is no citation to any medical evidence prior to Plaintiff's date last insured. Thus, this assertion is without basis.

(Doc. 15, pp. 15-16).

The record in this case does not include any medical opinion about Plaintiff's physical functional capacity. Plaintiff does not object to the lack of such opinion in his Brief.

The ALJ is only required to accurately convey to the VE, and account for in the RFC assessment, those limitations that are credibly established in the record. *Rutherford*, 399 F.3d at 554.  I construe Plaintiff's argument as an allegation that the ALJ did not account for all of Plaintiff's credibly established limitations, which in Plaintiff view include a limitation to no more than occasional use of both upper extremities. Credibly established limitations are:

> Limitations that are medically supported but are also contradicted by other evidence in the record may or may not be found credible—the ALJ can choose to credit portions of the existing evidence but "cannot reject evidence for no reason or for the wrong reason" (a principle repeated in *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993); Reg. § 929(c)(4)). Finally, limitations that are asserted by the claimant but that lack objective medical support may possibly be considered nonetheless credible. In that respect the ALJ can reject such a limitation if there is conflicting evidence in the record, but should not reject a claimed symptom that is related to an impairment and is consistent with the medical record simply because there is no objective medical evidence to support it (Reg. § 929(c)(3)).

*Rutherford*, 399 F.3d at 554.

Here, Plaintiff alleges that he has a credibly established limitation to his ability to use his upper extremities. As with his other arguments, he alleges that this

limitation is established by the 2010 Bureau of Veteran's Affairs decision. He does not cite to any objective support in the medical records or to Plaintiff's own testimony to support the existence of this limitation. As discussed above, under the version of 20 C.F.R. § 404.1504 that applies to Plaintiff's application, the ALJ was not required to consider the 2010 Bureau of Veteran's Affairs decision. Therefore, I am not persuaded that the ALJ erred by excluding limitations Plaintiff alleges are established by a piece of evidence that the ALJ was not required to consider.

3.    Whether the ALJ's Decision is Supported by Substantial Evidence Because he Did Not Cite to Three Representative Occupations

Under the Commissioner's regulations, "[w]ork exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which [the claimant] is able to meet with [his or he] physical or mental abilities and vocational qualifications." 20 C.F.R. § 404.1566(b). "Isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where you live are not considered 'work which exists in the national economy.'" *Id.* However, there is no bright line rule as to the number of jobs are "significant."

Plaintiff argues:

14.    The requirement is that a number of jobs are given as examples and that is always three (3) sample jobs. In this case, only two of

> the sample jobs would be within even the residual functional
> capacity found by the Administrative Law Judge. . . .

(Doc. 14, p. 7).

> In response, the Commissioner argues:

> And to the extent Plaintiff seems to argue (again without any citation
> to any biding authority) that the ALJ is required to identify three
> representative occupations that Plaintiff can perform, this argument is
> simply without basis (Pl.'s Br. at 7). Plaintiff is apparently alluding to
> the *Program Operations Manual System* (POMS), § DI 25025.30
> (Support for a Framework "Not Disabled" Determination). However,
> his reliance on the POMS is misguided.

> The relevant regulation here, 20 C.F.R. § 404.1566(b), provides that
> "[w]ork exists in the national economy when there is a significant
> number of jobs (in one or more occupations) having requirements
> which you are able to meet with your physical or mental abilities and
> vocational qualifications" (emphasis added). As just discussed,
> Plaintiff's attempt to undermine the validity of the representative
> occupations identified by the vocational expert due to an alleged
> limitations unsubstantiated in the relevant record, or due a supposed
> inconsistency with the DOT is simply without merit.

> In any event, as just discussed, and as confirmed by the POMS section
> Plaintiff may be attempting to rely on, "You may cite fewer than three
> occupations when it is clear that jobs exist in significant numbers within
> fewer than three occupation(s). Make this determination using
> vocational specialist advice supported by information contained in the
> publications listed in regulations sections 404.1566(d) and 416.966(d)
> or other reliable sources of occupations information." That is precisely
> what was done here and, accordingly, Plaintiff's step five argument is
> without merit.

(Doc. 15, pp. 17-19) (internal footnotes omitted).

> Even excluding the occupation of assembler of small parts, the ALJ has

identified a significant number of jobs that Plaintiff could perform. Taken together,

Page 40 of 43

the two remaining occupations (document preparer and charge account clerk) amount to approximately 40,000 positions in the national economy. (Admin. Tr. 21; Doc. 8-2, p. 22). Courts have found that 20,000 jobs or more is enough. *Young v. Astrue*, 519 F. App'x 769, 772 (3d Cir. 2013) (finding that 20,000 jobs is a significant number); *Brininger v. Berryhill*, No. 3:16-CV-00903, 2017 WL 3634187 at *15 (M.D. Pa. Aug. 7, 2017) (finding that 74,470 jobs is enough). However, the number of positions in the national economy isn't what Plaintiff finds fault in. Instead, he appears to argue that the ALJ erred by not following the Social Security Administration's Program and Operations Manual System ("POMS").

The Commissioner correctly identifies that the § DI 25025.30(C)(1) of the POMS states, under the heading "How to cite to occupations" and "subheading "How many occupations," that:

> Cite three occupations that are examples of work the claimant could do given his or her impairment-related limitations and restrictions. We base our medical vocational rules on the existence of unskilled work at all levels of exertion—from very heavy to sedentary.
>
> Cite to occupations within the claimant's RFC that contain jobs that exist in significant numbers in the national economy if:
>
> - A medical-vocational rule is not met; and
> - No SSR provides support for a finding that the claimant's limitations do not significantly erode the occupational based of the framework rule.
>
> EXCEPTION: You may cite fewer than three occupations when it is clear that jobs exist in significant numbers within fewer than three

occupation(s). Make this determination using vocational specialist advice supported by information contained in the publications listed in the regulations sections 404.1566(d) and 416.966(d) or other reliable sources of occupational information.

When evaluating similar arguments, other courts have noted that:

the POMS isn't a regulation that has controlling force. *See Parker v. Sullivan*, 891 F.2d 185, 190 (7th Cir. 1989); *Darley v. Berryhill*, 2018 WL 5631519 (N.D. Ill. Oct. 31, 2018) (finding the POMS direction to cite three occupations is, "at best, persuasive"); *Thompson v. Astrue*, 2013 WL 393290 (N.D. Ind. Jan. 31, 2013) ("the POMS manual does not impose judicially enforceable duties on an ALJ, it is considered persuasive").

*Butler v. Saul,* No. 2020 WL 5494745 at *5 (N.D. Ind. Sept. 11, 2020) (finding that an ALJ's decision was supported by substantial evidence even though the claimant could not perform one of the three occupations cited by the ALJ). Because it is clear based on the two remaining occupations (document preparer and charge account clerk) that a significant number (40,000 in the national economy) of jobs exist, I am not persuaded that remand is required.

[The next page contains the Conclusion]

V.      CONCLUSION

For the reasons set forth above that Plaintiff's request for remand is DENIED

as follows:

(1)     The final decision of the Commissioner is AFFIRMED.

(2)     Final judgment will be issued in favor of the Commissioner of Social
Security.

(3)     An appropriate order will issue.

Date: January 26, 2021                    BY THE COURT

                                          *s/William I. Arbuckle*
                                          William I. Arbuckle
                                          U.S. Magistrate Judge